# E. L. STRUBLE v. L. HENRY NELSON AND OTHERS.[1]

June 16, 1944.

No. 33,782.

[1]Reported in 15 N. W. (2d) 101.

*Magnus Wefald,* for appellant.

*Henry N. Jensen, Dorsey, Colman, Barker, Scott & Barber,* and *Charles B. Howard,* for respondents.

PETERSON, JUSTICE.

This is an appeal by plaintiff from an order sustaining defendants' demurrer to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The facts will be stated as they appear in the complaint.

Plaintiff brings the action as a taxpayer and water user of the village of Lake Park to restrain the village council from issuing without submission to popular vote revenue warrants payable solely from anticipated earnings of the village waterworks to pay for the installation of a water filtration and softening system as an improvement of and addition thereto. The resolution authorizing the issuance of the warrants recites that the installation is necessary in order to furnish an adequate and satisfactory water supply. The warrants do not obligate the village to pay the same in any other manner than that stated. The village has no bonded indebtedness. Among other things, the village covenanted with the holders of the warrants to create and maintain a fund to be known as the "Water Plant Revenue Fund," into which all receipts from the waterworks were to be paid and out of which, after payment of the expenses of operation and maintenance, the warrants were to be paid at the times and in the manner therein set forth; to maintain the rates charged water users in force at the time the resolution was adopted until the warrants shall have been paid; to pay into the fund five dollars per hydrant annually for water used by it; and to carry insurance on the waterworks against certain specified casualties, the proceeds of which in the event of loss were to be used either to repair and restore the plant or to pay and retire the

warrants. The resolution insofar as it relates to hydrant rental provides:

"* * * In order that the general inhabitants of the village shall pay for water service rendered by street sprinkling and washing and in fighting fires and not charged or paid for through the charges heretofore made, an additional charge of $5.00 per year for each fire hydrant is hereby imposed. Said charge shall be paid out of the general revenue fund of the village into the water plant revenue fund."

The plan involved the raising of cash with which to pay for the installation free from any lien by way of conditional sale, mortgage, or otherwise.

Plaintiff contends that the village council is without authority to make the improvement to the waterworks unless and until money for the purpose is available in the treasury of the village or unless the installation has been authorized by vote of the electors of the village. It has been assumed upon the argument that, if the village council has the power to issue the warrants, it also has the power to make the improvement. Plaintiff states that the only question involved is that of "the power of the village council to finance this improvement by issuing revenue bonds without an election." A further assumption has been made upon the appeal to the effect that a submission to a vote of the electors of the village is required by statute only where bonds creating a general obligation on the part of the village are to be issued, and that if the warrants in question do not create such an obligation the village council has the power and authority to issue them. It is claimed that, because of the covenants which the warrants contain, they created general village obligations and consequently were in effect bonds rather than revenue warrants.

■ A municipality does not incur a general obligation or debt by purchasing property to be paid for wholly out of income or revenue to be derived from the property purchased. Williams v. Village of Kenyon, 187 Minn. 161, 244 N. W. 558. See, Hendricks

v. City of Minneapolis, 207 Minn. 151, 290 N. W. 428; Davies v. Village of Madelia, 205 Minn. 526, 287 N. W. 1; City of Bemidji v. Ervin, 204 Minn. 90, 282 N. W. 683; Fanning v. University of Minnesota, 183 Minn. 222, 236 N. W. 217. In the Village of Kenyon case, the purchase of equipment for a village electric plant was involved; but no distinction can be made between the purchase of an electric plant and a waterworks, because the authority to acquire both is found in Minn. St. 1941, § 457.01 (Mason St. 1927, § 1229).

■ The point is made that the rule that an undertaking by a municipality to pay for property purchased out of income or revenue to be derived from its use applies only where the whole property is purchased and is to be paid for in that manner, and not where the purchase consists of an addition or betterment to property already owned by the municipality and the revenue or income to be derived from the property already owned and that purchased is to be used in paying for the property purchased. The authorities on this question are in conflict. The weight of authority supports the view that no general obligation or debt is incurred by a municipality by agreeing to pay for an addition or improvement to a utility plant already owned by it out of the income or revenue to be derived from the operation of the plant with the addition or improvement. City of Edwardsville v. Jenkins, 376 Ill. 327, 33 N. E. (2d) 598, 134 A. L. R. 891; Guthrie v. City of Mesa, 47 Ariz. 336, 56 P. (2d) 655; Searle v. Haxtun, 84 Colo. 494, 271 P. 629; State and Diver v. City of Miami, 113 Fla. 280, 152 So. 6; Farmers State Bank v. City of Conrad, 100 Mont. 415, 47 P. (2d) 853; Underwood v. Fairbanks, Morse & Co. 205 Ind. 316, 185 N. E. 118; 38 Am. Jur., Municipal Corporations, § 474. Such an obligation does not create a lien or charge upon the waterworks system. It pledges income or revenue to be derived from the utility by the municipality in its proprietary capacity. It places the burden for paying for the improvement upon the consumer for whose benefit the utility is maintained rather than upon the taxpayer. It does not deprive the latter of anything that is his, because in theory at least the governmental expenses of the municipality should be paid out

of taxes and other municipal revenues and those of a municipally-owned utility out of revenue derived from the operation of the utility. In Williams v. Village of Kenyon, 187 Minn. 161, 244 N. W. 558, *supra,* we practically adopted the rule stated, because there the issuance of warrants payable out of revenues to be received from a municipally-owned electric plant were pledged to pay for electrical equipment to be installed in a plant, for the payment of which the village had issued general obligation bonds.

■ The covenant to maintain existing rates to cover the payments to become due does not create a general obligation or debt. It is a covenant to perform an act. It is not claimed that existing rates are excessive. Whether an adjustment of rates could be made where it would not prejudice the payment of the warrants is not before us. The rule seems to be well settled that an undertaking to maintain rates sufficient to pay for property purchased, where no general obligation is otherwise created, does not in itself create an indebtedness. City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004; Oppenheim v. City of Florence, 229 Ala. 50, 155 So. 859; Interstate Power Co. v. Town of McGregor, 230 Iowa 42, 296 N. W. 770; Seward v. Bowers, 37 N. M. 385, 24 P. (2d) 253; Annotations, 146 A. L. R. 341; 96 A. L. R. 1390; 72 A. L. R. 692. In numerous cases it has been held that a municipality may contract with a utility company regarding rates as an incident of the grant of a franchise. Reed v. City of Anoka, 85 Minn. 294, 88 N. W. 981; Railroad Comm. v. Los Angeles Ry. Corp. 280 U. S. 145, 50 S. Ct. 71, 74 L. ed. 234; St. Cloud Public Service Co. v. City of St. Cloud, 265 U. S. 352, 44 S. Ct. 492, 68 L. ed. 1050. For the same reason, it may contract regarding rates as an incident to the purchase of a utility or the making of an addition to or improvement thereof.

■ Neither does the covenant on the part of the village to pay a fixed hydrant rental upon an annual basis to cover the cost of water furnished to it by the waterworks system create a general obligation or debt. The authorities are practically unanimous in holding that, where a municipality agrees to pay the regularly established rates for water used by it in its fire hydrants, but does not

obligate itself to use any water for such purpose, so that its obligation as a consumer of water is only for the amount which it uses and appropriates, no debt is created. Numerous cases hold that, where it obligates itself to pay a certain sum annually, it incurs an obligation to make such payment and that the obligation is a debt. 38 Am. Jur., Municipal Corporations, § 472. An agreement to pay hydrant rental is valid. Reed v. City of Anoka, 85 Minn. 294, 88 N. W. 981, *supra*. The difficulty in the particular case is to determine whether the municipality has obligated itself to use a particular amount and to pay for it. Here, the covenant did not bind the village to keep any of the hydrants connected with the waterworks system. The number of hydrants is not specified. The village may increase the number of them in use or it may discontinue the use of all of them. Where there is no binding obligation to keep a certain number of hydrants connected, a covenant to pay rental for hydrants connected at a stipulated rate per hydrant creates no debt. Simpson v. City of Highwood, 372 Ill. 212, 23 N. E. (2d) 62, 124 A. L. R. 1459. Where, as here, the agreement is to pay in periodic installments as the service is rendered, no present indebtedness is created for the amount of the installments to become due. A debt arises at the time the service is rendered. Walla Walla City v. Walla Walla Water Co. 172 U. S. 1, 19 S. Ct. 77, 43 L. ed. 341; Annotation, 103 A. L. R. 1160. We applied the rule recently in a case involving periodical payments of rent under a lease. Ambrozich v. City of Eveleth, 200 Minn. 473, 274 N. W. 635, 112 A. L. R. 269.

■ The covenant to carry insurance, like the others, is one for the performance of an act and does not create a debt. While the showing with respect to how the insurance premiums are to be paid is not explicit, presumably they are payable out of the income of the waterworks system. A municipality may protect itself against casualty by insurance. City of Red Wing v. Eichinger, 163 Minn. 54, 203 N. W. 622; 37 Am. Jur., Municipal Corporations, § 124; 38 *Id.*, § 492. Payment for coverage to protect the holders of the warrants is a legitimate expense of selling the warrants and stands

upon the same basis as any other expense in that connection. Prudence and foresight would seem to dictate that insurance should be carried with a suitable clause to protect the warrant holders by making available for the payment of the warrants, in the event the anticipated earnings to be derived from the operation of the plant were prevented by its injury or destruction, the proceeds of the insurance to be used either to make the earnings possible by the repair and restoration of the plant or as a substitute for the plant and the earnings dependent upon its future operation. The proceeds of insurance provided the funds to pay the warrants payable out of the revenues of the Washington Toll Bridge across the Tacoma Narrows which was destroyed when that great structure collapsed. See, Fordham, "Revenue Bond Sanctions," 42 Col. L. Rev. 395.

Our conclusion is that the covenants, with the exception of the one relating to hydrant rental, bound the village to the performance of acts; that the one relating to hydrant rental bound the village only upon the contingency that it kept the hydrants connected with the waterworks system, and then only as it availed itself in the future of the use of the connections; and that none of them created a general obligation or debt. Therefore, it was not necessary to submit the matter of issuing the warrants to the electors for their authorization.

Affirmed.

Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.