# OTTER TAIL POWER COMPANY AND OTHERS v. VILLAGE OF WHEATON AND OTHERS.[1]

### November 9, 1951.

### No. 35,641.

---

[1]Reported in 49 N. W. (2d) 804.

*Field, Field & Arvesen,* for appellants.

*Marvin E. Lundquist,* for respondents Village of Wheaton and the members of its council.

*Briggs, Gilbert, Morton, Kyle & Macartney,* for respondents Fairbanks Morse & Company and W. G. Peterson.

LORING, CHIEF JUSTICE.

This is an appeal from a judgment dismissing on the merits a suit to enjoin the village of Wheaton, Minnesota, from proceeding with plans to construct a municipal power plant and to issue revenue certificates in payment therefor. September 28, 1949, the village council passed a resolution to have an election on the question of building an electric power generating plant at an estimated cost of $452,000 to be financed by revenue certificates. At the election, October 14, 1949, the proposition carried by more than five-eighths majority. The village authorities prepared plans and specifications and asked for bids on each of five divisions of the construction work. Since only the division involving diesel-engine generating equipment is challenged in this suit, no details will be given as to the others.

The specifications as to the diesel engines required the following:

(1) Three engines, 500-650 kw. capacity per engine (as amended).

(2) Either 2-cycle or 4-cycle.

(3) Radiator cooling as the base bid; water tower as an alternate.

(4) A one-year guarantee against faulty parts.

(5) A statement of fuel guarantees and performance tests of fuel consumption before final acceptance.

(6) Factors to be considered in addition to total cost:

(a) Cost per kw. of capacity;

(b) Completion date;

(c) Qualifications of bidder;

(d) "Similar equipment demonstrating successful operation."

Six companies submitted bids, some on more than one size of engine. After the bids were opened, that of defendant Fairbanks Morse & Company was accepted, and a contract was entered into between the village and the company.

June 6, 1950, the village council passed a resolution directing the village clerk to call for bids for the sale of $450,000 worth of revenue certificates. June 20, 1950, this suit was brought. The sale of the certificates has not yet taken place. Plaintiffs contend:

(1) That the contract for the diesel engines was not let to the lowest responsible bidder;

(2) That Fairbanks Morse & Company, whose bid was accepted, occupied a favored position as a result of improper conduct by the bidder and the village council;

(3) That the village threatened to issue and sell certificates in an amount approximately $45,000 in excess of the total cost of the project, which would be illegal;

(4) That part of the moneys realized from the sale of certificates would be used to operate the plant and system, and that this would be contrary to law and the proposition approved by the voters.

June 29, 1951, the trial court entered judgment of dismissal on the merits pursuant to the following findings of fact and conclusions of law:

(1) "* * * that defendant Fairbanks-Morse and Co. was the lowest responsible bidder for the diesel engine generating units,

auxiliary equipment and piping," and that the contract was duly and regularly awarded.

(2) That the plans and specifications were "lawful, reasonable and proper, and within the discretionary power of the council to approve and adopt."

(3) That additional changes, equipment, office supplies, spare parts and equipment, fuel oil, etc., will require additional expense by the village; that these things are for the village council to determine; and that under M. S. A. 475.58, "the council is authorized to issue revenue obligations without a vote of the electors. If any balance remains after the project is completed and paid for, such balance will, under the provisions of section 475.65 M. S. A. become a part of the sinking fund of the Village."

(4) That the claims of plaintiffs that there existed undue favoritism or that there was collusion between the village and the company are not supported by the evidence.

Plaintiffs appealed from the judgment. Although numerous assignments of error were made, they present only the following issues for decision:

(1) Was the acceptance of the bid by Fairbanks Morse & Company properly within the discretion of the council as an acceptance of the lowest responsible bid?

(2) Did Fairbanks Morse & Company occupy a favored position as a result of favoritism?

(3) Is the proposed issuance of revenue bonds illegal—

(a) Because items of cost of operation are included?

(b) Because major additional items of construction not included in the awards to the successful bidders and upon some of which no bids have as yet been called for are included?

(4) Did the court err in the admission of certain evidence excepted to by appellants?

Some of these issues raise more than one question. The questions will be considered separately, although they are not so stated above.

■ Fairbanks Morse & Company was low bidder for equipment with radiator cooling; it was not low bidder on equipment with tower cooling. M. S. A. 412.311 provides:

"* * * Every contract for the purchase of merchandise, materials or equipment or for any kind of construction work undertaken by the village which requires an expenditure of $500 or more shall be let to the lowest responsible bidder, after ten days' public notice."

Plaintiffs contend that the village council was obligated to accept the lowest responsible bid, regardless of whether the bid included radiator or tower cooling, as both were within the specifications. If this contention were sound, it would follow that the council would be required to decide, before requesting bids, exactly the type of equipment to be used. This would be highly impractical. One of the factors to be considered in deciding what type should be used is the difference in price between what would be considered the most satisfactory and a second choice. If the second choice were cheaper in a large amount, it might be more advisable than the first choice simply on the basis of the difference in price. If the difference in price were only slight, the most satisfactory equipment would be chosen. For this reason, village councils may not always be able to decide what type of equipment should be used until the prices for the various types are known. There was no showing by plaintiffs that the specifications were too broad, either as to the two cooling systems or in the capacity ranges listed. The lower court's finding in this respect must be sustained. In fact, plaintiffs concede, in discussing in their brief the relative merits of the two cooling systems, that there are "disadvantages and advantages of both systems."

As the specifications were proper, the village council, in its discretion, could disregard the alternate in accepting the lowest responsible bid. Of course, there must be a reasonable basis for such exercise of discretion. There is sufficient testimony in the record to support the choice by the village council as being a reasonable exercise of discretion. 43 Am. Jur., Public Works and Contracts,

§ 37; Annotation, 96 A. L. R. 712, 713; cf. City of Detroit v. Hosmer, 79 Mich. 384, 389, 44 N. W. 622, 623 ("the council must have discretion in determining the merits and reliability of the various means of reaching that result").

■ Plaintiffs contend that Fairbanks Morse & Company could not have been low bidder in view of the fuel consumption guarantees and costs per kw. A tabulation of the bids as to costs per kw. shows that, if fixed costs (building and switch gear) are not included, Fairbanks Morse & Company was the lowest bidder as to cost per kw. On the other hand, if fixed costs are included, Fairbanks Morse & Company was only the second low bidder. While we need not state which is the proper rule in all cases, it would seem that fixed costs should be included only to the extent that a higher rated capacity is of value. Computation shows that inclusion of fixed costs favors the higher rated capacity; but a higher capacity is not always valuable to the extent of the full rating. Therefore, the inclusion of total fixed costs can be misleading under these circumstances in figuring costs per kw.

A tabulation shows that Fairbanks Morse & Company equipment did not have the lowest fuel consumption guarantees. It is pertinent that these guarantees do not extend further than the time of final acceptance when tests are run. Thus, the word "guarantee" is a misnomer. Plaintiffs contend that equipment with lower fuel guarantees would enable the village to recoup any extra amount paid for such equipment and make further gains over a period of time. This argument must be based on the assumption that the amount of fuel consumed will continue according to the guarantees. There is conflicting testimony in the record. At any rate, the village council was not obliged to accept the bid on the basis of fuel consumption alone where a higher initial cost would be entailed.

As can be seen, even assuming for this purpose that fixed costs are to be included in computing cost per kw., there was a different low bidder on each of the three bases. This means that, according to plaintiffs' argument, whatever choice the council made could be attacked as not being the lowest responsible bid. A village coun-

cil. cannot be so bound. If it were, its path would be more treacherous than that between Scylla and Charybdis. We can do no better than hold, as this court held in Otter Tail Power Co. v. Village of Elbow Lake, 234 Minn. 419, 423, 425, 49 N. W. (2d) 197, 201, that—

"where bids are requested on equipment that is not subject to exact specifications, the council must be allowed some latitude in considering not only the price but the suitability of the article for the use for which it is intended. * * *

\* \* \* \* \*

"* * * the discretion exercised must be reasonable and must be based upon some substantial difference in quality or adaptability. * * * Here, the court has found that the village accepted the lowest responsible bid, and we believe that there is ample evidence to sustain that finding; consequently, that it must stand." [2]

In the instant case, the record shows that councilmen and citizens of the village visited various installations; that Fairbanks Morse & Company had far more installations within the state than all the other bidders combined; and that service on equipment was available from Fairbanks Morse & Company offices in St. Paul. In view of all the testimony, we must hold that there was a reasonable basis for the council's decision and that there has been no abuse of discretion. The trial court's finding that Fairbanks Morse & Company was the lowest responsible bidder must be sustained.

It seems that after the bids were opened the council had some doubt as to what it was required to consider under the law. On September 27, 1949, and on April 26, 1950, the village attorney wrote another attorney asking for opinions. The latter attorney had been recommended by an agent of Fairbanks Morse & Company. He had represented the company in prior litigation and is counsel for the company on this appeal. At the time his advice was asked and received by the village, the attorney did not represent the com-

[2]See, also, Missouri Service Co. v. City of Stanberry, 341 Mo. 500, 515, 108 S. W. (2d) 25, 33; Koich v. Cvar, 111 Mont. 463, 110 P. (2d) 964.

pany in any capacity. In his letter of advice, he suggested that the bids could not be accepted on the mere basis of fuel consumption, but that all bids should be rejected and new ones submitted. As can be seen, the village council did not heed this advice. Yet plaintiffs urge that getting advice from this attorney was improper and that it constituted favoritism toward the company. If their argument were sound, villages in such cases as this would be denied what they might deem the best legal counsel available. As this court said in Davies v. Village of Madelia, 205 Minn. 526, 531, 287 N. W. 1, 4:

"The council should not and need not be deprived of the knowledge and experience of those familiar with matters relating to municipal power plants merely because they represent a possible bidder. What the law demands is that the council preserve its right of independent action." [3]

In the instant case, the attorney did not represent the bidder at the time the advice was given.

According to plaintiffs, there is another basis for the charge of favoritism, in that an agent of Fairbanks Morse & Company gave advice to, and was in attendance on, the village council. This was also true of most of the other bidders. Likewise, the councilmen were taken on inspection trips by representatives of the various companies. There is nothing in the record which would indicate favoritism by the council to Fairbanks Morse & Company, and the lower court was justified in finding that there was none. Davies v. Village of Madelia, 205 Minn. 526, 529, 530, 287 N. W. 1, 3.

■ Plaintiffs urge that the proposed bond issue is illegal because included among costs are items such as salaries, fuel, and spare parts; and the village council voted only to *construct* a plant and system. As was said in Sharp v. Police Jury, 194 La. 220, 229, 193 So. 594, 597:

"* * * it follows inevitably that the authority so granted must include every essential step in the process by which a building once

[3] See, 43 Am. Jur., Public Works and Contracts, § 15; Annotations, 51 A. L. R. 1307, 1312, and 126 A. L. R. 1271, 1273.

begun—and however it may have been begun—can be carried to completion where its public use becomes an accomplished fact."[4]

It would avail little if the village could construct the plant and equip it, but could not buy fuel to operate it. It is a matter of simple business practice that costs of beginning operation must be included in construction costs where the purpose is enunciated to be "the generation and distribution of electricity." Words are to be taken in their reasonable meaning; and, when the village electors voted to construct the plant, they necessarily must have had initial operation in mind.

■ Plaintiffs argue that the proposed revenue certificate issue should be enjoined because the amount to be issued exceeds the cost of the project. The trial court stated in a memorandum that it is impossible to determine accurately the amount necessary to be expended and that, under M. S. A. 475.65, any surplus automatically would go into a sinking fund. This statute is explicit:

"* * * Any balance remaining after the improvement has been completed and paid for shall become a part of the sinking fund of the municipality."

It is worthy of note that the provision as to *sinking* fund originated in L. 1949, c. 682, § 15. This section amended the former § 475.18, which provided that excess moneys received would go into the *general* fund. In view of the amendment, it is clear that any excess would go into a sinking fund, and that an excess could be expected.

■ Nor can this court hold that the village council is required to give a precise estimate of the amount of moneys necessary to complete the project. We need not even consider the practicability of such a proposition. M. S. A. 412.321, subd. 2, provides that in an election on the question of constructing a public utility—

---

[4]Cf. State ex rel. Edwards v. Millar, 21 Okl. 448, 454-457, 96 P. 747, 750-751. This question also was raised in Otter Tail Power Co. v. Village of Elbow Lake, 234 Minn. 419, 49 N. W. (2d) 197, but only in the trial court. The trial court found in favor of the village (Record, pp. 1040, 1043), but it was not urged as error and not decided on appeal.

"Such proposal shall state * * * the estimated cost or the maximum amount to be expended for that purpose."

Since there is no ambiguity in the statute, only the estimated cost or the maximum amount need be stated in the proposition submitted to the voters. In the instant case, exactly this was done.

■ Plaintiffs contend that a new proposal should be submitted to the electors of the village on the question of issuing the revenue certificates. M. S. A. 475.58, subd. 1, provides:

"Except as provided in subdivision 2 no obligation shall be issued without first obtaining the approval of a majority of the electors voting on the question of issuing the obligation, except an obligation, issued:

* * * * *

"(4) payable wholly from the income of revenue-producing conveniences;"

The trial court held, and we agree, that under the statute a village council is authorized to issue revenue obligations without a vote of the electors.[5]

■ Because the plans have been changed, alterations made, and some things added, and because all bids have not as yet been submitted or accepted, plaintiffs urge that the village should be enjoined from issuing revenue certificates. On the record, the trial court could, and did, find that the village had taken no improper steps. To be entitled to an injunction, "plaintiff must bring itself within the well-established rule that the threatened injury must be real, substantial, and irreparable" (J. F. Quest Foundry Co. v. International M. & F. W. Union, 216 Minn. 436, 440, 13 N. W. [2d] 32, 34) ; or, to state it another way: "It is a well settled rule that an injunction ought not to be granted, unless the injury is pressing and the delay dangerous, or * * * where the injury might be irreparable." Goodrich v. Moore, 2 Minn. 49 at p. 50 (61 at p. 63). We cannot assume that village authorities will take improper action.

[5]Under the Minnesota cases, this was true even prior to this statutory provision. Struble v. Nelson, 217 Minn. 610, 15 N. W. (2d) 101; cf. Williams v. Village of Kenyon, 187 Minn. 161, 244 N. W. 558.

Even were such action to be taken, there would be ample time to seek relief in the courts. At the present time, we must hold, as we did in Reed v. Village of Hibbing, 150 Minn. 130, 140, 184 N. W. 842, 847:

"* * * The anticipated injuries to the village and its inhabitants * * * are either too remote or problematic to resort to the remedy of an injunction now, * * *."[6]

Plaintiffs assign as error admission of certain testimony by the village engineer. The testimony was in regard to a letter written by him and sent to a firm employed by the village. It was offered in evidence by plaintiffs. According to the record, the letter included a list of additional items of expense, and the engineer testified that the letter was written after conferences with the village council. Plaintiffs objected to the testimony on the ground that it would violate the best-evidence rule, in that the minutes of the council meeting were available. The objection was overruled by the court in the following statement: "I think the witness may explain the letter, * * *." The village engineer was allowed to explain what led him to write the letter and also the bases and computations which he used in arriving at various estimates contained in it. In a trial before the court without a jury and also where the best-evidence rule is raised as an objection, the trial judge is given wide discretion, and there will be a reversal only where prejudicial error is clearly shown. Fleetham v. Lindgren, 221 Minn. 544, 22 N. W. (2d) 637; Gasser v. Great Northern Ins. Co. 145 Minn. 205, 176 N. W. 484.

Furthermore, the admission of the engineer's explanation was not a violation of the best-evidence rule. The best-evidence rule is to the effect that a document is to be proved by the document itself. Plaintiffs contend that evidence of the actions by the village council are to be proved only by minutes of the council meetings, but the testimony given and objected to was not as to any action by the village council as such. The testimony was solely as to what led the

[6]We specifically do not now decide what is the proper course for the village to take as to additions and alterations on equipment or construction already bid on without such alterations and additions.

witness to write the letter and his computations—things peculiarly within his knowledge. Therefore, the best-evidence rule had no application. Minnesota Debenture Co. v. Johnson, 96 Minn. 91, 94, 104 N. W. 1149, 107 N. W. 740, 741; 4 Wigmore, Evidence (3 ed.) §§ 1242, 1252.

Judgment affirmed.