James Richard **KUNZ**, petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C3–83–1884.

Court of Appeals of Minnesota.

June 12, 1984.

Ralph E. Carter, Pine Island, for appellant.

Hubert H. Humphrey III, Atty. Gen., Linda F. Close, Joel A. Watne, Sp. Asst. Attys. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and FORSBERG and RANDALL, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This is an appeal of the trial court's order sustaining the revocation of appellant's driver's license pursuant to Minn. Stat. § 169.123 (1980), the implied consent statute. We affirm.

## FACTS

At approximately 7:38 p.m. on November 26, 1980, Goodhue County Deputy Sheriff James Luetke was called to the scene of a five car accident. There he talked with two young boys who said they witnessed the accident. The boys told Luetke that four of the cars involved had been parked on the west side of Main Street in front of the Assembly of God Church. They said that appellant was driving south on Main, struck the curb and flew into the first parked car. The impact with the first parked car caused a chain reaction with three more parked cars.

After listening to the boys' account, Luetke approached appellant. Appellant admitted he was the driver of the vehicle involved. Luetke could not recall whether he smelled alcohol on appellant's breath or whether the young witnesses had indicated that appellant had been drinking. He did remember, however, that appellant was nervous and flushed and in his opinion was under the influence of alcohol.

Luetke invited appellant into the squad car and read him the implied consent advisory in its entirety. Appellant was advised of and declined to exercise his right to counsel. Appellant was asked and acknowledged that he understood the form and his rights. He was offered a blood or breath test. Appellant chose the blood test.

Luetke then drove appellant and appellant's wife to the Zumbrota Hospital. Jeanie Wilcox, a lab technician at Zumbrota, drew the blood sample from appellant. Wilcox has no independent recollection of drawing the sample. Her testimony was based on an entry in the logbook the hospital kept in the lab for blood alcohol tests. More specifically, she testified from a xerox copy of the page listing appellant's name. Wilcox did not make the copy or bring the original because she no longer worked at the hospital. The copy does, however, contain her handwriting and signature. Over appellant's objection, Wilcox was permitted to testify based on the copy of the logbook entry. She testified that had there been anything unusual about drawing the sample, such as nonuse of the police officer's blood kit, she would have recorded it in the logbook. Since she made no such notations, she concluded the procedure was routine.

Wilcox gave the sample to Luetke who mailed it to the BCA for analysis. Norma Molina, a crime lab analyst for the State of Minnesota, analyzed the sample twice. Molina checked the testing equipment prior to analyzing the sample and determined it was working properly. The December 1, 1980 analysis revealed a blood alcohol content of .196%. The December 2, 1980 analysis revealed a blood alcohol content of .201%. As is the customary practice, Molina dropped the third digit of the lower figure and recorded .19%.

Appellant was notified of the results and his right to a hearing and exercised it. The trial court heard the evidence and on October 18, 1983, issued an order sustaining the revocation of appellant's license. This appeal followed.

## ISSUES

1. Whether the trial court erred in concluding the officer had probable cause to believe appellant had operated a motor vehicle under the influence of alcohol.

2. Whether lab technician Wilcox was competent to testify when she had no independent recollection of drawing appellant's blood sample.

3. Whether the trial court erred in admitting a copy of the relevant page of the hospital's blood alcohol logbook.

## ANALYSIS

1. Appellant's driver's license was revoked pursuant to Minn.Stat. § 169.123 (1980). In relevant part, the statute provides:

Any person who drives, operates, or is in physical control of a motor vehicle within this state consents, subject to the provisions of this section and section 169.121, to a chemical test of his blood, breath, or urine for the purpose of determining the presence of alcohol or a controlled substance. The test shall be administered at the direction of a peace officer. The test may be required of a person when an officer has reasonable and probable grounds to believe the person was driving, operating, or in physical control of a motor vehicle in violation of section 169.121 and one of the following conditions exist: ... (2) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury, or death; ....

Minn.Stat. § 169.123, subd. 2(a) (1980). Appellant was unquestionably involved in a motor vehicle accident resulting in property damage. He maintains, however, that Officer Luetke lacked reasonable and probable grounds to believe he was driving the vehicle under the influence of alcohol.

Testifying three years after the event, Officer Luetke could not recall for sure whether he had smelled liquor on appellant's breath. He observed, however, that appellant was nervous and flushed. Luetke also believed the young witnesses said something about appellant's drinking. Finally, there is the scene of the accident itself. The nature of the accident might have made Luetke suspect that appellant had been drinking.

As a matter of public policy, D.W.I. laws are to be liberally construed in the public's favor. *Minnesota Department of*

*Public Safety v. Juncewski,* 308 N.W.2d 316, 319 (Minn.1983). Many telltale signs of intoxication exist independently or in combination with others. All signs need not be exhibited in every case. *In fact, an officer need only have one objective indication of intoxication to constitute reasonable and probable grounds to believe a person is under the influence. State v. Hicks,* 301 Minn. 350, 222 N.W.2d 345 (1974). See also *State v. Schneider,* 311 Minn. 566, 249 N.W.2d 720 (1977).

*Rude v. Commissioner of Public Safety,* 347 N.W.2d 77 at 79 (Minn.Ct.App. April 17, 1984) (quoting *Holtz v. Commissioner of Public Safety,* 340 N.W.2d 363, 365 (Minn.Ct.App.1983)).

 Even with a liberal construction of our D.W.I. laws, the existence of probable cause in this case is a close question. While it is understandable that the officer's memory would cloud after three years, sufficient facts must still be established at the hearing to conclude probable cause existed. We conclude that the trial court's opportunity to observe Officer Luetke's examination left it in a better position to evaluate his testimony. We find sufficient facts to support its conclusion that probable cause existed.

2. Lab technician Wilcox was called to establish that a sample of appellant's blood had been drawn and drawn properly. By the time of trial, however, she had no present independent recollection of drawing appellant's blood and stated nothing could refresh her memory. She did have a copy, however, of a page of the hospital logbook for blood alcohol tests. She testified that every time a blood sample was drawn for alcohol analysis, a contemporaneous entry was made in the logbook. She also stated there is a standard procedure for drawing alcohol related blood samples and that any deviations from that procedure are recorded with the entry. The page she brought included an entry of appellant's name for November 26, 1980.

 "It appears to be well settled that an authenticated memorandum of past rec-

ollection may be properly received in evidence as an exception to the hearsay rule." *Walker v. Larson,* 284 Minn. 99, 105, 169 N.W.2d 737, 741 (1969). See also Rule 803(5) Minn.R.Evid. Wilcox ordered the copy from the hospital and identified her handwriting and signature. As the author of the written record, Wilcox was competent to testify and critical to authentication of the writing.

 As to her testimony that the sample was drawn routinely, it is settled that "[d]etermination of a person's competency as a witness is within the sound discretion of the trial court ...." *State v. Tahash,* 278 Minn. 175, 177, 153 N.W.2d 232, 234 (1967). As a lab technician, she was competent to state the standard procedure for drawing blood for alcohol analysis. If her regular practice included notation of any deviation from the standard procedure, she was also competent to state the absence of such notation indicates the standard procedure was observed. Rule 406 Minn.R.Evid. Any failure to specifically recollect drawing appellant's blood affects the weight of her testimony, not its admissibility.

3. Appellant's objection to admission of the xeroxed copy of the logbook entry is twofold. First, he maintains that the best evidence rule requires exclusion of a copy when the original is available. Second, he claims that Wilcox cannot properly identify the entry since she did not make the copy itself. The trial court overruled both objections and the document was admitted into evidence.

The Minnesota Supreme Court has said:

In a trial before the court without a jury and also where the best-evidence rule is raised as an objection, the trial judge is given wide discretion, and there will be a reversal only where prejudicial error is clearly shown.

*Otter Tail Power Co. v. Village of Wheaton,* 235 Minn. 123, 134, 49 N.W.2d 804, 811 (1951).

Rule 1003 of the Minnesota Rules of Evidence provides that:

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Wilcox testified that the xerox of the logbook page with appellant's name was in her handwriting. She also signed the entry. Appellant offered no evidence to suggest that the copy contradicted the original entry or that he was otherwise prejudiced by admission of the copy. As such, we cannot say the trial court abused its discretion.

## DECISION

Appellant admitted driving the car involved in the accident. The state has shown a blood sample was drawn from appellant and that the alcohol concentration of his blood was .19%. This evidence is sufficient to revoke appellant's driver's license pursuant to Minn.Stat. § 169.123 (1980).

Affirmed.