JOHN T. O'CONNOR, JR. *vs.* SMITHKLINE BIO-SCIENCE
LABORATORIES, INC.

No. 93-P-707.

Suffolk. March 7, 1994. - April 21, 1994.

Present: PERRETTA, FINE, & GILLERMAN, JJ.

*Proximate Cause. Negligence*, Proximate cause, Drug testing. *Police*,
Urine testing. *Practice, Civil*, Summary judgment, Affidavit. *Evidence*,
Custom and usage.

In a negligence action brought by a former trainee for a position as a
police officer against a medical testing laboratory, summary judgment
was correctly entered in favor of the defendant where the plaintiff's
evidence of causation established no more than a possibility that negli-
gence of the defendant caused a mix-up in urine samples resulting in a
urine sample containing cocaine, which the plaintiff denied ever using,
being attributed to the plaintiff. [362-365]
An affidavit submitted in a civil action in support of a party's motion for
summary judgment contained evidence admissible as business custom,
and the judge properly declined to strike it. [365-366]
In a civil action, certain material submitted in opposition to a motion for
summary judgment was irrelevant, and a certain argument in opposi-
tion to the motion had no support in the record. [366]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 6, 1989.

The case was heard by *Barbara A. Dortch*, J., on a motion
for summary judgment.

*James F. Lamond* for the plaintiff.

*Andrew E. Shipley* for the defendant.

FINE, J. While the plaintiff was a cadet in training at the
Boston Police Academy, he was required to submit a urine
sample for drug testing. The test, performed by the defend-
ant, SmithKline Bio-Science Laboratories, Inc. (Smith-
Kline), revealed traces of cocaine in his urine, and, as a re-
sult, he was discharged. The plaintiff brought this action,

claiming that SmithKline was negligent in handling his urine sample and that, as a result, his sample was confused with that of some other person, one who had used cocaine. SmithKline filed a motion for summary judgment, which was allowed, and the plaintiff has appealed.

We outline the facts presented to the motion judge as they relate to the handling of the plaintiff's urine sample and the relevant procedural requirements established by the Boston police department and SmithKline to assure the integrity of the test results.

On October 6, 1986, the plaintiff, as instructed, provided a urine sample which he placed in the plastic specimen bottle he had been given, sealed the bottle, and fastened red evidence tape to the lid. The bottle had a label on it with a number and a space for him to record his name and his police identification number. He filled in the blanks on the label. He also printed his name, police identification number, and the time, 4:00 P.M., on a chain of custody form and a requisition form, wrapped the requisition form around the bottle, placed the bottle in a bag, closed the self-sealing bag, and handed it and the chain of custody form to his commanding officer. The commanding officer, in turn, placed the bag, along with others, in a box.

A SmithKline courier arrived at police headquarters to pick up the box of urine samples. The officer at the reception desk had to inquire of another officer about the location of the samples. After a while, the samples were found, and the courier delivered them without incident to SmithKline's specimen processing department. The courier had not been given a chain of custody form to sign, and no one in the specimen processing department signed any chain of custody form. Someone in the specimen processing department opened the box containing urine samples from the plaintiff and other trainees and routed them to the toxicology department.

According to her affidavit, Susan Milligan of the toxicology department was the first SmithKline employee to handle the sealed sample bottles. Her name follows the plaintiff's on the chain of custody form, which indicates that she signed it

at 11:30 P.M. According to her affidavit, she had no specific memory of handling the plaintiff's sample, but her usual practice before testing a sample was to check to see that the bag's seal was intact and the evidence tape secure. Were it not, she stated, she would have noted that on the chain of custody form and not proceeded to perform the test. From the absence of such notation on the chain of custody form, she knew that there were no problems with the plaintiff's urine sample.[1] She proceeded to perform the test and record the results. Because her test results indicated the presence of cocaine, another SmithKline employee, Mark Petruck, repeated the test on a different portion of the urine taken from the same bottle, confirming Milligan's results.

SmithKline provided the bottles, labels, packaging materials, and forms, including the chain of custody form. Boston police department regulations set forth the procedures for the trainees to follow in sealing, labelling, and packaging the samples and required that all staff members handling the samples sign a chain of custody form. It was the policy at SmithKline at the time that all employees handling specimens, including employees in the specimen processing department, were required to sign the appropriate chain of custody form.

The plaintiff stated in his affidavit that he never used cocaine. There is no claim that the urine sample attributed to him was not properly tested. For purposes of the motion for summary judgment, therefore, we accept, as we must, the inference favorable to the plaintiff that there was a mix-up between the plaintiff's sample and someone else's at some time between his placing the sealed package containing the sealed bottle in the box at the Boston Police Academy and Milligan's receipt of the sample for testing.

After carefully reviewing the materials presented to her, the motion judge concluded that the plaintiff had shown

---

[1]In her affidavit, Milligan stated, "I know that the seal on the bag was intact when I received it, that the evidence tape on the bottle was intact when I removed the bottle from the bag, and that the information on the requisition form and the label matched."

neither negligence nor a causal relationship between any failure on SmithKline's part and the harm suffered. Because juries are uniquely qualified to apply the reasonable person standard and to decide questions of causation, a plaintiff usually is afforded the right to have his claim tried before a jury. See *Johnson* v. *Summers*, 411 Mass. 82, 88 (1991); *Foley* v. *Matulewicz*, 17 Mass. App. Ct. 1004, 1005 (1984); *Noble* v. *Goodyear Tire & Rubber Co.*, 34 Mass. App. Ct. 397, 402 n.2 (1993). We are mindful of that general rule as we analyze the evidence before the motion judge to determine whether, in our view, summary judgment was appropriately allowed in this case. That depends upon whether the defendant has demonstrated that the plaintiff "has no reasonable expectation of proving an essential element" of his case. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Because SmithKline, as moving party, showed that the plaintiff, who would have had the burden of proof at trial, had no reasonable expectation of proving causation, we affirm.

The plaintiff established sufficient evidence of negligence. Given the importance of the tests to be performed and the possibility that, through a mix-up, intentional or otherwise, test results could be attributed to the wrong individual, SmithKline's policy of requiring that all persons handling the samples sign a chain of custody form, indicating the hour at which they do so, is a reasonable one. Neither the courier nor anyone in the specimen processing department signed the chain of custody form. A reasonable fact finder could determine that SmithKline's failure to assure that its policy was being followed constituted negligence.

The plaintiff also had to produce evidence that would have warranted a fact finder in concluding that it was probable that the negligence caused the harm suffered. See *Mullins* v. *Pine Manor College*, 389 Mass. 47, 58 (1983). If the evidence, viewed in the light most favorable to the plaintiff, established no more than a possibility of such a causal relationship, any resulting jury verdict would be based on speculation and could not stand. See *Fields* v. *Oberstein*, 347

Mass. 777 (1964). Viewed closely, the plaintiff's evidence of causation establishes no more than a possibility that SmithKline's negligence caused the harm of which the plaintiff complains.

The courier stated in his affidavit and deposition that, although he signed no chain of custody form, he picked up a sealed box, had sole possession of it while he transported it, and delivered it, without incident, to the specimen processing department. The plaintiff offered no specific evidence to counter the courier's evidence. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. at 716. Any negligence on the courier's part in failing to sign a chain of custody form, therefore, could not have caused one of the sample bottles to have been switched.

Milligan's affidavit establishes that, once the samples were in her custody, the procedures she followed would have prevented a switch in the samples. Again, the plaintiff offered no evidence to counter the defendant's evidence that there was no causal negligence at any time after Milligan took control of the sample. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. at 716.

We acknowledge that there is a gap in SmithKline's evidence. Nothing is presented with regard to events between the time the courier dropped the box off in the specimen processing department and the time Milligan took possession. Within that period of time, of several hours' duration, an unnamed employee in the specimen processing department presumably opened the box but did not sign the chain of custody form. There is at least the possibility that the samples were switched during that period, an occurrence made more likely by the failure of SmithKline personnel to follow the company's procedures. Milligan, however, stated in her affidavit that she would have been the first SmithKline employee to handle the sample bottles. Because she signed the chain of custody form without having made a notation on it, she knew that she was the technologist who opened the sample bag containing the plaintiff's sample bottle, that at that time the seal of the bag and the seal of the evidence tape were intact,

and that the information on the requisition form and on the label matched. It follows, therefore, that any substitution of someone else's urine in the bottle, or any substitution of labels on the bottle, or any other means of switching the sample, would have been the result of intentional tampering. Given the plaintiff's affidavit stating that he never used cocaine, the possibility of such tampering cannot be ruled out, and it may be that rigid adherence to SmithKline's chain of custody procedures would have prevented it. Police personnel also failed to comply with chain of custody procedures, however, and it is at least as likely that the urine sample was tampered with while it remained in police custody as while it was in the custody of SmithKline's specimen processing department. Any conclusion, therefore, that samples were switched while in SmithKline's control could be based only on conjecture.

According to our analysis, the issue turns on Milligan's affidavit. The plaintiff moved to strike the affidavit in the trial court as not conforming to the requirements of Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974), and claims on appeal that the motion judge erred in failing to strike it. The issue is whether the affidavit, based on the witness's usual practices, not her particular recollection, would be admissible at trial. We think Milligan's testimony would be admissible as evidence of business custom rather than individual habit. See *Elias* v. *Suran*, 35 Mass. App. Ct. 7, 12 (1993). As a technologist who regularly handled samples and performed tests, Milligan was competent to testify to her usual practice when she would note a deviation in the sample and to the significance of the absence on the chain of custody form, which she signed, of such a notation. See *Kunz* v. *Commissioner of Pub. Safety*, 349 N.W.2d 593, 596 (Minn. App. 1984). See also *Mayberry* v. *Holbrook*, 182 Mass. 463, 464-465 (1903); *Mumford* v. *Coghlin*, 249 Mass. 184, 188 (1924); *Santarpio* v. *New York Life Ins. Co.*, 301 Mass. 207, 209 (1938); Liacos, Massachusetts Evidence § 4.4.9 (6th ed. 1994). Milligan's lack of specific recollection, which, in the

circumstances, is understandable, would go to the weight of the evidence.

Evidence of problems at SmithKline relating to testing, but unrelated to the plaintiff's urine sample, do not add anything of significance on the issue of causation. The fact that on ten or eleven occasions SmithKline technicians were in disagreement about a test result is irrelevant to the issue whether it is likely that there was a switching of the plaintiff's urine sample with that of another person. As his deposition indicates, in the one instance in which Petruck (the technologist who confirmed Milligan's positive testing of the plaintiff's urine sample) was aware of a mislabeling of a sample, he was able to catch the discrepancy before SmithKline sent out a report on the test. Finally, contrary to the plaintiff's contention, there is no evidence in the record that the police trainees' urine samples were commingled with specimens from other clients.

*Judgment affirmed.*