**Jason EIPP and Brenda Eipp, individually and as mother and next friend of Alexis Nicole Eipp, Plaintiffs,**

**v.**

**JIMINY PEAK, INC., Defendant.**

**No. Civ.A. 00–30114–KPN.**

United States District Court,
D. Massachusetts.

July 25, 2001.

Joseph G. Abromovitz, Boston, MA, for Jason Eipp, and plaintiff.

David M. Mongue, Donovan & O'Connor, Adams, MA, for Jiminy Peak, Inc., defendant.

Joseph H. Matzkin, Looney & Grossman LLP, Boston,, MA, for Boston Concessions Group, Inc., movant.

*MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 24)*

NEIMAN, United States Magistrate Judge.

Jason Eipp ("Plaintiff"), his wife and minor daughter (collectively "Plaintiffs") bring this negligence action against Jiminy Peak, Inc. ("Defendant"), the operator of a ski area where Plaintiff was injured on January 24, 2000. Defendant, asserting that the suit is barred by the Massachusetts Ski Safety Act, MASS.GEN.L. ch. 143, §§ 71H–71S, moves for summary judgment. For the reasons set forth below, the court will deny Defendant's motion.[1]

## I.  *SUMMARY JUDGMENT STANDARD*

A court may grant summary judgment pursuant to FED.R.CIV.P. 56(c) if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Once the moving party has asserted that no genuine issue of material fact exists, the burden is on the opposing party to point to specific facts demonstrating that there is, indeed, a

---

1.  The parties have consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c).

trial worthy issue. *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995). A "genuine" issue is one "that a reasonable jury could resolve ... in favor of the nonmoving party." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). *Accord United States v. One Parcel of Real Property, Great Harbor Neck, New Shoreham, R.I.*, 960 F.2d 200, 204 (1st Cir.1992).

Not every genuine factual conflict, however, necessitates a trial. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Parrilla–Burgos v. Hernandez–Rivera*, 108 F.3d 445, 448 (1st Cir.1997) (*citing Martinez v. Colon*, 54 F.3d 980, 983–84 (1st Cir.1995)). At bottom, matters of law are for the court to decide at summary judgment. *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996).

## II. BACKGROUND

The material facts are summarized in a light most favorable to Plaintiff, the nonmoving party. *See Santiago–Ramirez v. Secretary of Dept. of Defense of United States*, 62 F.3d 445, 446 (1st Cir.1995). Plaintiff, along with his wife and daughter, lives in Loudenville, New York. (Docket No. 15: Plaintiff's Amended Complaint ("Complaint") ¶ 1.) Defendant is a corporation which operates a ski area in Hancock, Massachusetts. (*Id.* ¶¶ 4, 8.) This suit arises out of injuries sustained by Plaintiff at the ski area. (See *id.* ¶¶ 10–12.)

On the night of January 24, 2000, while skiing on an expert trail, Plaintiff fell, slid and collided with a snowgun, a device used to make snow. (*Id.* ¶¶ 10–12; Docket No. 27: Affidavit of David B. Mongue ("Defendant's Exhibits"), Exhibit D at 15, 17.) Plaintiff has no memory of the accident. (*Id.*, Exhibit G at 21.) However, two of his

skiing companions witnessed the fall and crash while riding the ski lift over the trail. (*Id.*, Exhibit F at 15, Exhibit H at 22.) According to the witnesses, Plaintiff appeared to lose his balance negotiating a bump in the trail. (*Id.*, Exhibit F at 18, Exhibit H at 29.) Off-balance, Plaintiff encountered a second bump and fell to the ground. (*Id.*, Exhibit F at 15, Exhibit H at 38.) He slid down the slope headfirst for an unknown distance before colliding with the snowgun. (*Id.*, Exhibit F at 15, Exhibit H at 40.)

Shortly thereafter, Plaintiff's companions found him, bleeding profusely, about ten feet past the snowgun. (Docket No. 31: Plaintiffs' Memorandum of Law in Support of Their Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Brief"), Exhibit F at 20.) Plaintiff's injuries were serious. He suffered cardiac arrest, a subdural hematoma and eventually required surgical insertion of a plate to replace sections of his fractured skull. (Defendant's Exhibits, Exhibit D at 2, 5–6.) Plaintiff also broke his neck and two ribs, injured his shoulder and was convalescent for six months. (*Id.*)

The snowgun, which stood forty-four feet inside the skiable area of the trail, was somewhat novel in its dimensions and portable design. (*Id.*, Exhibit E at 46 and Exhibit 5 thereto; Plaintiffs' Brief, Exhibit D at 35.) While Defendant avows that four striped orange and black marking poles were located a short distance uphill from the snowgun, (Defendant's Exhibits, Exhibit C at 1), Plaintiff presents evidence to the contrary, including the testimony of three witnesses who also skied the trail that night. Only one of the witnesses saw either the snowgun or marking poles prior to Plaintiff's accident. (Plaintiff's Brief, Exhibit H at 12–13, Exhibit I at 12–13, Exhibit J at 65.) Another witness who saw the gun noticed its presence only after

he nearly collided with it. (*Id.*, Exhibit F at 13–14.)

As amended, Plaintiffs' complaint has three counts. In Count I, Plaintiff alleges negligence, while in Counts II and III, Plaintiff's wife and daughter seek recovery for loss of his consortium. The court heard oral argument on Defendant's motion for summary judgment on July 12, 2001.

## III. *DISCUSSION*

The parties agree that Massachusetts law applies to this negligence action, in particular the Massachusetts Ski Safety Act ("MSSA"). A violation of the MSSA, the parties concur, although "not conclusive on the ultimate issue of civil liability," would constitute evidence of Defendant's negligence. *See LaClair v. Silberline Mfg. Co.*, 379 Mass. 21, 393 N.E.2d 867, 871 (1979). Thus, if a jury could reasonably find that (1) Defendant had a duty of due care under the MSSA, (2) Defendant breached that duty, and (3) Defendant's breach proximately resulted in Plaintiff's injury, then summary judgment cannot enter. *See Fithian v. Reed*, 204 F.3d 306, 308 (1st Cir.2000); *Bennett v. Eagle Brook Country Store, Inc.*, 408 Mass. 355, 557 N.E.2d 1166, 1168 (1990). After first describing the background of the MSSA, the court will consider these three elements in turn. The court will conclude by briefly addressing the loss of consortium causes of action.

### A. *The MSSA*

Enacted in July of 1978, the MSSA sets forth the concomitant duties of skiers and ski area operators. MASS.GEN.L. ch. 143, §§ 71N, 71O. The legislation's most oft cited purpose is to "define and restrict the responsibility and liability of ski operators to skiers injured by risks inherent in the sport of skiing." *McHerron v. Jiminy Peak, Inc.*, 422 Mass. 678, 665 N.E.2d 26, 27 (1996) (citing St.1978, c. 455). However, an equally important purpose of the MSSA is to increase skier safety by "requiring operators to implement greater safety precautions." *Tilley v. Brodie Mountain Ski Area, Inc.*, 412 Mass. 1009, 591 N.E.2d 202, 203 (1992) (quoting Note, *Ski Operators and Skiers—Responsibility and Liability*, 14 New Eng.L.Rev. 260, 271 n. 79 (1978)); *see also Diehl v. Catamount Ski Area, Inc.*, 1990 WL 72073, at *3 (D.Mass. May 23, 1990). The MSSA represents the legislature's "judgment as to the proper balance between the skier's need for safety and the ski area operator's economic survival." *McHerron*, 665 N.E.2d at 27.

### B. *Defendant's Alleged Duties*

It is elementary that there can be no liability in negligence in the absence of a legal duty to the plaintiff. *O'Sullivan v. Shaw*, 431 Mass. 201, 726 N.E.2d 951, 954 (2000); *McNulty v. McDowell*, 415 Mass. 369, 613 N.E.2d 904, 906 (1993). The MSSA sets forth the specific duties for which ski area operators and skiers are held responsible. For purposes here, the duties of ski area operators are defined as follows:

A ski operator shall:

(1) whenever maintenance or snow-making equipment is being employed on any ski slope or trail open to the public, conspicuously place or cause to be placed, notice at or near the top of any ski slope or trail being maintained that such equipment is being so employed, and shall conspicuously indicate the location of any such equipment in a manner to afford skiers reasonable notice of the proximity of such equipment; [and]

. . . .

(6) maintain a sign system on all buildings, recreational tramways, ski trails

and slopes in accordance with rules and regulations promulgated by the board and shall be responsible for the maintenance and operation of ski areas under its control in a reasonably safe condition or manner; provided, however, that ski area operators shall not be liable for damages to persons or property, while skiing, which arise out of the risks inherent in the sport of skiing.

MASS.GEN.L. ch. 143, § 71N. Stated another way, Defendant has three statutorily defined duties to Plaintiff arguably bearing on this matter: (1) the duty to maintain a sign system in accordance with the rules and regulations of the Recreational Tramway Board ("Board")[2]; (2) the duty to conspicuously place notice and indicate the location of snow making equipment when such equipment "is being employed"; and (3) the general duty to maintain and operate its ski area in a reasonably safe condition or manner.

## C. Defendant's Alleged Breaches

It is well recognized that "[i]n the absence of 'some act or omission in violation of a legal duty' there can be no negligence." *Little v. Lynn & Marblehead Real Estate Co.*, 301 Mass. 156, 16 N.E.2d 688, 691 (1938) (citations and internal quotation marks omitted). For the purposes of the instant summary judgment motion, therefore, the question is whether a reasonable jury could find that Defendant breached one or more of its duties to Plaintiff under the MSSA. For the following reasons, the court believes a jury could so find.

As indicated, ski area operators are required to "maintain a sign system on all buildings, recreational tramways, ski trails

and slopes in accordance with [the] rules and regulations promulgated by the [B]oard." MASS.GEN.L. ch. 143, § 71N(6). In pertinent part, the Board's regulations describe with specificity the appropriate signs to be implemented for the purposes of complying with section 71N(6):

(2) TO ADEQUATELY ALERT SKIERS, the following signs shall be used: (a) Caution. A 14–inch by 14–inch sign consisting of an orange triangle on white background, with an orange exclamation point on a yellow background within the triangle. The word CAUTION shall appear below the triangle.

[Figure 4—Image of sign.]

Caution sign shall be posted where and when necessary to adequately alert skiers of known dangers of any slope or trail at ski areas, and it shall be posted uphill of any snowgrooming or snowmaking operation. When the Caution sign is used with snowmaking or snowgrooming, the sign shall have fastened to the bottom a 4–inch by 14–inch white sign with contrasting color printing of either the words SNOWGROOMING or SNOWMAKING.

. . . .

(5) Hydrant Markers. Horizontally or diagonally striped orange and black poles shall be used to mark snowmaking hydrants and other obstructions. Markers shall be made out of slalom poles or other suitable material. These markers shall at all times extend above the snow a minimum of five feet.

526 C.M.R. § 8.01(2), (5).

■ Defendant asserts that the snowgun, being an "obstruction," need only be marked as required by subsection (5), not

---

**2.** The Board is an administrative body created by the MSSA. *See* MASS.GEN.L. ch. 143 § 71H. *See also* MASS.GEN.L. ch. 143, § 71J (authorizing the Board to promulgate "rules

and regulations for a system of signs to be used by a ski area operator in order to promote the safety of skiers").

subsection (2). As evidence of having met its subsection (5) obligations, Defendant points to photographs entered into the record depicting smashed remnants of orange and black striped poles lying about the base of the snowgun. However, this evidence does little to forward Defendant's contention because, as Plaintiffs argue and Defendant concedes, the photographs can only demonstrate the presence of the poles, not that they, at the relevant time, "extend[ed] above the snow a minimum of five feet" as subsection (5) mandates.

Granted, Defendant, via an affidavit filed at the conclusion of oral argument, describes the physical characteristics of eight-foot poles systematically employed on the premises, as well as the technique by which these poles are "primarily erected":

> In the past 10 years the[ poles] have been primarily erected by inserting them into a hole drilled in the snow using a battery operated hand drill. The drill bit is 18″ in length. Although a hole is typically less than 18″ inches deep, in no event are these holes drilled more then [sic] 18″ in depth. Once the hole is drilled the hazard-marking pole is inserted. The pole would extend at least 6 1/2′ above the snow surface.

(Docket No. 33: Affidavit of Paul C. Maloney, ¶ 5.) This affidavit, however, offers no proof of the height or position of the poles—described at oral argument as being inserted at an angle—at the time of Plaintiff's accident. Furthermore, several of Plaintiff's witnesses have testified that the requisite poles were either not present on the subject slope that night or, at the very least, that they escaped the witnesses' detection. Accordingly, even if the court accepts as accurate Defendant's reading of the applicable law and is prepared to apply only subsection (5), a reasonable jury could find that Defendant violated that subsection and, thereby, breached its duty to maintain hydrant markers.

More problematically for Defendant, subsection (2) of the applicable regulation describes with specificity the condition under which certain "caution" signs must be posted. Defendant concedes in the record, and confirmed at oral argument, that no such signs were utilized with respect to the snowgun on the evening in question. Nevertheless, Defendant argues, such caution signs were not mandated since there was no active "snowgrooming or snowmaking operation" in process at the time.

In the court's view, Defendant draws too fine a distinction. The caution signs described in subsection (2) are to be used in at least two ways. First, as Defendant acknowledges, caution signs must be posted uphill of any "snowgrooming or snowmaking operation." When used in that manner, the caution sign must have attached to its bottom another sign, the dimensions of which are specified, which uses either the word "snowgrooming" or "snowmaking." In this respect, the court is inclined to agree with Defendant that the snowgun, which was not then operative (in the sense of making snow), did not require the posting uphill of the two attached signs. *See* MASS.GEN.L. ch. 143, § 71N(1) ("whenever ... snow making equipment is being employed on any ski area or trail open to the public, [a ski operator shall] conspicuously place ... notice at or near the top of any ski slope or trail being maintained that such equipment is being so employed").

■ Defendant does not acknowledge, however, that subsection (2) also mandates that a caution sign, without the dangling attachment regarding "snowmaking," "shall be posted where and when necessary to adequately alert skiers of known dangers of any slope or trail at ski areas." With this requirement in mind, Plaintiff

has presented sufficient evidence for a jury to conclude that the snowgun at issue here was a "known danger" for which appropriately located caution signs, in addition to the hydrant markers required by subsection (5), were necessary. Using this as evidence, a reasonable jury could also find that Defendant breached its duty to Plaintiff under subsection (2).

■ A reasonable jury might also conclude that Defendant breached its general duty to operate the ski area "in a reasonably safe condition or manner." Mass. Gen.L. ch. 143, § 71N(6). For example, as Plaintiff asserts, Defendant may have voluntarily assumed a duty by padding some equipment on other, less difficult trails and then breached that duty by not padding the snowgun at issue here.

To be sure, the statue provides an exception to the general duty by protecting ski area operators from liability for "damages ... which arise out of the risks inherent in the sport of skiing ." Mass.Gen.L. ch. 143, § 71N(6). *Accord* Mass.Gen.L. ch. 143, § 710. *See also McHerron,* 665 N.E.2d at 27. However, the examples of "inherent" risks which are enumerated by the statute appear to include only natural hazards: "variations in terrain, surface or subsurface snow, ice conditions or bare spots." Mass.Gen.L. ch. 143, § 710. As then Magistrate Judge Michael A. Ponsor explained in *Diehl,* 1990 WL 72073, at *3, "inherent" risks constitute "all natural conditions beyond the control of the ski area operators or the skier." The presence of a snowgun in the middle of a ski trail does not appear to fall into this category.

## D. *Causation and Injury*

"A cause of action in negligence requires the breach of a duty which is the proximate cause of a plaintiff's injury." *Ortiz v. Hampden County,* 16 Mass.App.Ct. 138, 449 N.E.2d 1227, 1228 (1983) (citing *Bea-* ver v. Costin, 352 Mass. 624, 227 N.E.2d 344, 346 (1967), and Restatement (Second) of Torts § 328A (1963–1964 & Supp.1982)). Plaintiff's injuries are uncontested by Defendant, and neither party submits theories of causation, actual or proximate, in their briefs or at oral argument. This may arise, in part, from the complicating circumstance of the accident having gone functionally unwitnessed, as Plaintiff has no memory of the collision.

■ "Because juries are uniquely qualified to apply the reasonable person standard and to decide questions of causation, a plaintiff usually is afforded the right to have his claim tried before a jury." *O'Connor v. SmithKline Bio–Science Laboratories, Inc.,* 36 Mass.App.Ct. 360, 631 N.E.2d 1018, 1020 (1994) (citations omitted). In this light, the court cannot say Defendant has effectively averred "an absence of evidence to support the [Plaintiff]'s case" with respect to causation. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, summary judgment will not enter on the basis of any causation argument.

## E. *Loss of Consortium*

Finally, Defendant asserts that Plaintiff's wife's and daughter's loss of consortium claims (Counts II and III) are inextricably intertwined with Plaintiff's negligence claim (Count I). Because it is entitled to summary judgment with respect to Count I, Defendant continues, it is also entitled to summary judgment on Counts II and III. For the reasons indicated, however, the court has determined that Plaintiff's negligence claim must survive. Accordingly, the loss of consortium claims will survive as well.

## V. *CONCLUSION*

For the foregoing reasons, Defendant's motion for summary judgment is DE-

NIED. The parties shall complete their expert depositions within sixty days hereof and the clerk shall set the matter down for a final pretrial conference thirty days thereafter.

IT IS SO ORDERED.