DAWN W. NOBLE vs. GOODYEAR TIRE AND RUBBER
COMPANY, INC., & another.[1]

No. 92-P-240.

Middlesex. February 16, 1993. - April 27, 1993.

Present: DREBEN, SMITH, & GILLERMAN, JJ.

*Negligence*, Manufacturer, Proximate cause. *Motor Vehicle*, Investigation
of accident. *Practice, Civil*, Summary judgment. *Evidence*, Expert
opinion.

In an action for personal injuries sustained in an automobile accident al-
legedly caused by the blowout of a defective tire, the plaintiff's proffer
of admissible evidence in opposition to the defendant manufacturer's
and distributor's motion for summary judgment was sufficient to raise a
genuine issue of material fact with respect to breach of warranty and
negligence, and the case was to stand for trial. [398-403]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 2, 1988.

The case was heard by *George A. O'Toole, Jr.*, J., on a
motion for summary judgment.

*Robert F. Casey, Jr.*, for the plaintiff.

*John C. Kane, Jr.*, for Goodyear Tire and Rubber Com-
pany, Inc.

*Carolyn DeSpirito* for Bournival Chrysler-Plymouth, Inc.

GILLERMAN, J. The plaintiff was seriously injured when the
automobile she was driving rolled over, throwing her out of
the car and onto the roadway. She remembers nothing of
what happened. Following the allowance of the defendants'
motion for summary judgment, judgment was entered in
favor of the defendants. We reverse.

The plaintiff alleges that the cause of the accident was a
blowout of a Goodyear Vector radial tire on the right (pas-

---

[1]Bournival Chrysler-Plymouth, Inc.

senger's side) rear wheel of the plaintiff's automobile, and that the blowout was the result of a defective tire attributable to the defendants' negligence and breach of warranty.

The dispute as to whether there was a genuine issue of material fact turns principally on the sufficiency of the admissible evidence proffered by the plaintiff on the issue of causation: did the alleged defect in the tire cause the blowout which, in turn, caused the accident? See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 714 (1991).

The judge proceeded by assuming that the tire had a manufacturing defect, but he nevertheless concluded that there was no basis in the proffered evidence for the opinion of the plaintiff's expert that the defect caused the blowout, or that the blowout caused the vehicle to go out of control. Thus there was no basis, according to the judge, for a jury to conclude that the defect caused the accident.

Given Noble's inability to recall any of the events surrounding the accident, the plaintiff's opposition to summary judgment could not be sustained without the aid of the opinion of Dr. Martin M. Sackoff, an expert in the field of organic polymer chemistry. Dr. Sackoff's opinion, expressed in his affidavit dated May 3, 1990, and in his deposition on January 24, 1991, was to the effect that there was a manufacturing defect, that the defect caused the blowout, and that the blowout caused the accident. This was the opinion the judge dismissed as inadequate.

In his affidavit, Dr. Sackoff, whose qualifications as an expert with respect to causes and effects of tire failure appear to have been accepted by the judge and not to have been challenged by the defendants, opined, from his observations of the tire, that in a significant number of areas, there had been a separation of the liner from the ply of the body of the tire, and that "within reasonable scientific probability, . . . the final failure of the tire was effected by the separations of the liner from the underside of the tread stock areas. This caused a blowout of the sidewall with an instantaneous total deflation of the tire." He explained that this failure of adhesion of the tubeless tire liner (a process called "delamina-

tion") permitted a seepage of compressed air into the body of the tire which "can lead to separations in the tire body, and these separations will increase in severity with service time until the tire fails, which may occur by complete deflation of the tire instantaneously comparable with, or the same as a blowout." In Dr. Sackoff's opinion "the tire failed as the result of a blowout of the outer sidewall, which was caused by inherent defects in the tire. An instantaneous total deflation of the right rear tire of a car travelling at highway speed (approximately fifty-five miles an hour) will more likely than not cause the car to lose control." In his deposition he explained further that "during the manufacturing process, something occurred which caused [the] liner not to have its required adhesion overall to the ply," and that the separation of the liner from the ply of the tire occurred before the accident.

Difficulties with Dr. Sackoff's opinions emerged at his deposition upon cross-examination. Because Noble could not testify that she experienced a blowout, the critical issue was whether Dr. Sackoff adequately demonstrated that the alleged manufacturing defect (the separation of the liner from the body of the tire) caused a blowout — or, more simply still, was there any showing of a preaccident blowout?

The judge was correct in pointing out two important difficulties with the opinion testimony. First, on Dr. Sackoff's own explanation of the accident, there must be seepage of compressed air into the area between the separated liner and the wall of the tire, and Dr. Sackoff acknowledged in his deposition that he did not observe any source of air seepage into a pocket. "Without evidence of a source of air seepage, the jury could not find it to have occurred," the judge wrote in his careful and detailed memorandum. Second, the judge, pointing to Dr. Sackoff's testimony that "something occurred which caused the car to go out of control, and one of the items which will cause a car to go out of control more nearly than anything else is a blowout," concluded from this that "Dr. Sackoff in effect assumed that a blowout had caused the car to go out of control. He recognized that there could be a

number of reasons other than tire failure why a car might go out of control, such as driver inattention . . . [thus Dr. Sackoff] assumed as a basis for his opinion the very fact his evidence is offered to prove — that a blowout occurred."

However, immediately after the testimony to which the judge pointed, the following exchange occurred:

Q. "What, if anything, from the visual observations you made of the liner in this tire caused you to conclude that the liner separation had caused a blowout?"

A. "I think one of the — I believe one of the most evident visual pieces of the tire in this case is that the condition of the cords which a lot of which [*sic*] were just hanging loose. When a blowout occurs, cords usually separate, and that is one of the observations that can be made in this case."

Q. "I'm focusing for the moment, Dr. Sackoff, solely on the liner, and I repeat my question. What if anything with respect to your visual examination of the liner led you to conclude that a liner separation had caused a blowout?"

A. "Again I repeat, the condition of some of the cords. There's no blowout in the liner as such. The sidewall blew, not the liner."

True, the "cords" were those in the body of the tire, not the liner, and thus the question of causation was not precisely answered. But it is clear that there was testimony by Dr. Sackoff which, based on his visual findings, tended to establish the fact of the blowout — it was no longer merely an assumption he made.

What is lacking, still, is an observed source or point of air seepage into the area behind the separated liner — the causal link between the delamination and the blowout. On that issue, Dr. Sackoff left it that he could not find the source because of the extent to which the tire had been de-

stroyed in the blowout. We shall return to this point in a moment.

There remains a further difficulty which the defendants press upon us: there was no direct evidence of preaccident liner separation or air seepage, and, absent such evidence, Dr. Sackoff could not render an opinion as to a preaccident tire failure. Here the evidence of the parties is conflicting, but in setting out the relevant facts we "resolve any conflicts in the summary judgment materials, and we make all logically permissible inferences, in the plaintiff's favor." *Ulwick v. DeChristopher*, 411 Mass. 401, 402 (1991). The plaintiff, through the affidavits of two employees of Jon Kazanjian's Auto Repair, Inc., proffered a towing report of that company which showed that on the day of the accident, September 14, 1988, the plaintiff's automobile, which had rolled over, was "ramp trucked" on a flatbed truck, not towed on the rear wheels of the automobile, from the scene of the accident — this because the car was untowable by a regular tow truck. Within a week after the accident Arthur R. Noble, the plaintiff's father, examined the automobile at the salvage yard where it was stored. He examined the automobile and saw that the "tire on the rear passenger side was completely blown out around where the whitewall would have been." On September 29, 1988, two weeks after the accident, Noble removed the right rear tire from the wheel of the automobile. Dr. Sackoff testified that he examined the tire "a few days after October 14 up to the time of a few days prior to the writing of my report, which is dated November 22, 1988."

Given the observed liner separation, evidence of the blowout demonstrated by the cords from the body of the tire observed to be separate and hanging loose, the fact of the rolled-over position of the automobile at the conclusion of the accident, the evidence that immediately after the accident the plaintiff's automobile was untowable and was therefore ramp trucked from the scene of the accident, the evidence that the tire on the right rear wheel was seen within one week thereafter and the observer, Noble, saw that the tire was completely blown out, the evidence that Noble removed

the tire from the vehicle on September 29, and the evidence that Dr. Sackoff examined the tire beginning a few days after October 14, 1988, it is logically permissible to infer in the plaintiff's favor, see *Ulwick, supra,* at 402, that (i) air seepage did in fact occur even though its precise point of origin could not be identified because of the destruction of the tire in the course of the blowout; (ii) the blowout occurred immediately prior to the accident as a result of the delamination; and (iii) the driver lost control of her automobile as a result of the blowout, causing her to be seriously injured.

Obviously, there are gaps in this chain of evidence proffered by the plaintiff. Not every day, from the date of the accident, is accounted for; not every past event left behind its visible marker; not every turn in Dr. Sackoff's opinion is faultless. The plaintiff's case is not perfect, but a perfect case need not be shown in opposing a motion for summary judgment. A reasonable measure of doubt may be tolerated because "all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment." *Correllas* v. *Viveiros,* 410 Mass. 314, 316-317 (1991). See also *Henshaw* v. *Cabeceiras,* 14 Mass. App. Ct. 225, 229 (1982) ("The duty of a trial judge . . . on a motion for summary judgment 'is not to conduct a "trial by affidavits" [or other supporting materials], but to determine whether there is a substantial issue of fact' " [citation omitted]).[2]

Relying largely on the testimony of State Trooper Gallagher,[3] the defendants have mounted a vigorous attack on

---

[2]The Supreme Judicial Court has emphasized, as has this court, that "summary judgment is seldom sought or granted in negligence actions." *Manning* v. *Nobile,* 411 Mass. 382, 388 (1991), quoting from *Inferrera* v. *Sudbury,* 31 Mass. App. Ct. 96, 103 (1991). This is "because the application of the reasonable person standard is uniquely within the competence of the jury." Moriarty, The Law of Summary Judgment in Massachusetts 43 (Flaschner Jud. Inst. 1990).

[3]The defendants offered the affidavit of State Trooper Gallagher, who arrived at the scene immediately after the accident, and who investigated the accident, to the effect that there was no visible evidence of a preaccident tire failure, and that none of the tires he examined at the scene of the accident resembled the photograph of the tire examined by Dr. Sack-

the weight to be given to the opinions of Dr. Sackoff; but in the procedural setting of this case, those arguments do not count. In judging a motion for summary judgment, "[t]he court is not to pass on the credibility of the witnesses or on the weight of the evidence." *Attorney Gen.* v. *Brown*, 400 Mass. 826, 832 (1987). Further, the opinion of an expert is not to be dismissed as a "generalized assertion of opinion" so long as it is "sufficiently substantial . . . to raise an apparent issue of fact." *Rutland* v. *Fife*, 385 Mass. 1010 (1982). On the facts as we have summarized them, the proffered opinion of Dr. Sackoff satisfies this test.

We conclude that the evidence proffered by the plaintiff is sufficient to raise genuine issues of breach of warranty and negligence. The judgment must be reversed and the case is to stand for trial in the Superior Court.

*So ordered.*

---

off. In addition, affidavits offered by the defendants tended to prove that the plaintiff's automobile was towed on its rear wheels, not ramp trucked, and that this towing from the scene of the accident accounts for the blowout condition of the tire examined by Dr. Sackoff.