van Gestel, Allan, J.
This matter is before the Court on Defendants Arthur Pappathanasi, Nicholas Scangas, Christopher Scangas, 330 Scangas, Inc., Scangas Management, Inc., Harriet Maistrellis, Pamela Scangas, Patricia Scangas and Arthur Scangas’ Motion for Summary Judgment on Plaintiff, Kathryn Diamond’s Supplemental Complaint (the “Scangas defendants”), Paper #31.

BACKGROUND

The underlying case is an action brought by Kathryn Diamond, individually and on behalf of Scangas Realty Associates (“SRA”), 330 Scangas Limited Partnership (“330 Scangas, LP”), and Scangas Realty II Limited Partnership (“Scangas Realty II”). The action is said to seek redress of breaches of fiduciary obligations, conversion, and civil conspiracy by, among others, certain general partners of SRA, 330 Scangas, LP and Scangas Realty II. Involved are various members of the somewhat extended Scangas family. The litigation is, in many respects, bitter and personal.
SRA is a Massachusetts partnership formed pursuant to an Agreement of Association of Scangas Realty Associates dated as of December 31, 1973. The original partners of SRA were Paul Scangas,[1] Tina Scangas,[2] Katherine Scangas,[3] Angelo Scangas, Catherine Scangas, Nicholas Scangas, Christopher Scangas, Patricia Scangas, Pamela Scangas, Arthur Scangas, James Scangas, Penelope Scangas, Janice Scangas, Joyce Scangas, Joan Whelan, James Pappathanasi, George Pappathanasi, Arthur Pappathanasi and Harriet Maistrellis.'It appears that originally each of the foregoing partners of SRA held a 1 /19th interest therein.
Over the years the membership in SRA changed for reasons not explained to the Court, except in the instance of Paul N. Scangas who died in 1987. In her original complaint Diamond alleges, upon information and belief, that the current partners of SRA and their respective interests therein are: Diamond, 5.263%; Joan Whelan, 5.263%; Athena Scangas, 5.263%; Paul Scangas Realty, LLC, 5.263%; Arthur Pappathanasi, 11.278%; Harriet Maistrellis, 11.278%; Nicholas Scangas, 11.278%; Patricia Scangas, 11.278%; Pamela Scangas, 11.278%; Arthur Scangas, 11.278%; and Christopher Scangas, 11.278%.
Scangas Realty II is a Massachusetts limited partnership formed pursuant to an Agreement dated December 27, 1985. Scangas Management, Inc. is the general partner of Scangas Realty II. The limited partners of Scangas Really II, each with apparently equal interests, are: Nicholas Scangas, Christopher Scangas, Arthur Scangas, Patricia Agganis, Pamela Towne, Joan Whelan, Kathryn Diamond, Janice Scangas, Joyce Scangas, Arthur Pappathanasi and Harriet Maistrellis.
330 Scangas LP is another Massachusetts limited partnership formed pursuant to an Agreement dated February 7, 1995. 330 Scangas, Inc. is the general partner of 330 Scangas, LP. SRA is the sole limited partner of 330 Scangas, LP.
The three partnerships, for the most part, have as their purpose the purchase, sale, leasing, development, renovation, construction and management of real estate.
Diamond’s supplemental complaint was filed on February 28, 2006. It seeks declaratory relief to the effect that certain purported amendments to the SRA and Scangas Realty II agreements are wholly ineffective.
At issue in the present motion is whether two recent attempts to amend the SRA agreement and the Scangas Realty II agreement were legally accomplished. Each attempted amendment was designed to permit the particular partnership to expel a partner, with or without cause. Diamond contends that these amendments are aimed at her and, if valid, will become the vehicles for freezing her out of the partnerships.
With regard to the SRA amendment, its adoption depends upon the identity of the partners thereof at the time of the vote. This in turn depends upon whether the Paul N. Scangas Really, LLC (“PNSRLLC”) ever became a partner of SRA.
The PNSRLLC is a Massachusetts limited liability company. It was formed on October 31, 1997. At the time of its formation, and today, the PNSRLLC had, and has, three managers: Athena Scangas, Paul N. Scangas’s widow; Katherine[4] Diamond, one of Paul N. Scangas’s daughters; and Joan Whelan, the other of *523 Paul N. Scangas’s daughters. The purpose of PNSRLLC is described in its Certificate of Organization as being to engage in the business of acquiring, holding for investment, managing, leasing, developing, improving, mortgaging, selling and otherwise dealing in real property.
In an affidavit filed in opposition to the present motion Diamond stated, among other things, as follows:
Over ten years after my father Paul N. Scangas died, my sister, Joan Whelan, my mother Athena Scangas, and I organized the PNSRLLC to hold various real estate interests that my father had owned at his death, including his interest in SRA. After the PNSRLLC was formed, I notified Pappathanasi of our family’s desire, and request, that PNSRLLC become a partner of SRA and that it be recognized as the successor in interest to the estate of Paul N. Scangas. The other partners of SRA consented to our request. Indeed, it was granted without objection and without controversy. Since then, PNSRLLC has been recognized as a partner of SRA and received and exercised all of the rights and benefits of partner ship, including, sharing in profits and losses and voting at partnership meetings.
Diamond also points out in her affidavit, and has provided in an appendix of exhibits in opposition to the present motion, documents showing and acknowledging that PNSRLLC is a partner of SRA. Included are financial statements prepared by SRA’s accountants and Federal Tax Schedule K-ls for each of the years 2000, 2001, 2002, 2003, 2004 and 2005.
Arthur Pappathanasi has submitted an affidavit in support of the present motion. In it he says, among other things:
One of the original partners [of SRA], Paul Scangas, transferred his partnership interest to Paul Scangas Realty LLC.
Paul Scangas Realty is not a partner and was not entitled to vote.
Paul Scangas Really was never admitted to the partnership, and has never voted on any partnership matter.
Article XIV of the SRA Agreement provides, ‘This Agreement may be amended at any meeting of the Members by a vote of not less than two-thirds (2/3) of the Members present and voting at such meeting, provided that written notice of the proposed amendment or amendments be given to the Members not less than five (5) days before the meeting.”
There is nothing in the summary judgment record showing any amendment of the SRA voting to admit PNSRLLC as a partner.
At a January 17, 2006, meeting of SRA for the purpose of voting on the proposed amendment to allow it to expel, with or without cause, a partner thereof, the following partners were present or represented by proxies: Arthur Pappathanasi and Patricia Scangas, each in person; Diamond and Joan Whelan, each by telephone; proxies from Pamela Scangas, Harriet Maistrellis, Nicholas Scangas, Christopher Scangas and Arthur Scangas authorizing Pappathanasi to vote for them; and a proxy from Athena Scangas authorizing Diamond to vote for her.
When it came time to vote on the proposed amendment, Patricia Scangas and Pappathanasi, the latter voting for himself and pursuant to the five proxies given to him, voted for the amendment. Joan Whelan and Diamond, the latter voting for herself and pursuant to the proxy given to her by Athena Scangas and allegedly as a manager for PNSRLLC, voted against the proposed amendment.
Pappathanasi challenged the vote on behalf of PNSRLLC, asserting that it was not a partner of SRA. There was a debate, after which Pappathanasi stated that the vote would be recorded “seven yes, three no and a question mark.”
It is in this context that the issue of the validity of the vote to amend the SRA agreement must be assessed.
The Scangas Realty II amendment stands on a different factual and legal basis. On January 12,2006, the defendant Scangas Management, Inc., as the sole general partner of Scangas Realty II, caused a Certificate of Amendment for Scangas Realty II to be filed with the Secretary of the Commonwealth. The Certificate purports to amend the Scangas Realty II partnership agreement by adding provisions that create and vest in the general partner the right and power to expel a limited partner, with or without cause.
The Scangas Realty II partners have never met to consider amending the agreement consistent with that stated in the Certificate of Amendment. There is no provision in the Certificate of Limited Partnership of Scangas Realty II or in the agreement among the partners that provides for any amendment thereto.
It is in this context that the issue of the validity of the purported amendment to Scangas Realty II must be assessed.

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving parly, here the Scangas defendants, bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
When, as here, the opposing party has the burden of proof at trial, the other party may be successful on *524 a summary judgment motion if it can show that the opposing party has no reasonable expectation of proving an essential element of that party’s case, Opara v. Massachusetts Mutual Life Insurance Company, 441 Mass. 539, 544 (2004).
It is argued by the Scangas defendants that: (1) the SRA agreement authorizes the partners to amend the partnership agreement; (2) Massachusetts law does not preclude the partners from approving an amendment to expel a partner; (3) Massachusetts law prohibits a person who acquires an interest in a partnership from managing the partnership’s affairs or business, including voting on partnership issues; and (4) the Scangas Realty II partnership agreement was properly amended because limited partners do not have the right to manage the affairs of a limited partnership. Consequently, they argue that both agreements have been duly amended and a declaration should be made to that effect and dismissing Diamond’s supplemental complaint.
The Court will discuss each purported amendment separately.

The SRA Amendment

The success of the Scangas defendants’ motion on the SRA amendment rests squarely on the issue of the status of the PNSRLLC as a partner of SRA. SRA is a Massachusetts partnership governed by G.L.c. 108A. Such a partnership is “an association of two or more persons to carry on as co-owners of a business for profit.” G.L.c. 108A, sec. 6. See McMurtie v. Guiler, 183 Mass. 451, 452 (1903). A common incident of a partnership is that the members enter into an agreement to share profits and losses that may result from the use of capital, labor or skill. Boyer v. Bowles, 310 Mass. 134, 138 (1941). See also Kansallis Finance Ltd. v. Fern, 421 Mass. 659, 668 (1996).
With regard to SRA there are significant gaps in the summary judgment record, both factual and legal, that require denial of the summary judgment motion as to it.
For example, Paul N. Scangas is said to have died in 1987. Article VIII of the SRA agreement provides that the interest of a partner “shall be deemed to have been withdrawn as of the end of the month during which such [partner] died.” Thereafter, SRA is required to pay to the legal representative of the deceased his liquidating share in the partnership. The record is incomplete on what happened to Paul N. Scangas’s interest in SRA following his death. Pappathanasi, by affidavit, suggests that his beneficial interest in SRA passed to his estate and thereafter K-ls and distributions were sent thereto. Then, in 2000 a request was made that the payee be changed to Paul N. Scangas Really, LLC, which was done. Pappathanasi insists, however, that PNSRLLC never was admitted to partnership in SRA.
Minutes of what are said to be the only three meetings of SRA since January 1, 2000, do not reflect the presence of PNSRLLC by a representative or by proxy, except for the meeting of January 17, 2006.
Diamond makes clear that the PNSRLLC was not formed until October 31, 1997, over ten years after her father’s death. But she says the PNSRLLC was organized to hold various real estate interests that her father had owned at his death, including his interest in SRA. This statement, however, is wholly unexplained. Title to real estate, for example, passes on death to heirs or as directed by a will. If these “real estate interests” were not title to real estate, what were they and how were they transferred? Although if there was no evidence presented at trial on these points, Diamond would seem to lose on the issue, at the summary judgment stage it is the Scangas defendants who bear the burden of affirmatively demonstrating that there is no triable issue of fact on the issue of what happened to Paul N. Scangas’s interest in SRA. Pederson v. Time, Inc., 404 Mass. 14, 17(1989). They have not done so here, because, with conflicting affidavits, the Court cannot make credibility judgments, and must grant favorable inferences to the opposing party. Noble v. Goodyear Tire and Rubber Company, Inc., 34 Mass.App.Ct. 397, 402 (1993).
Still further, even if Paul N. Scangas’s interest in SRA was eliminated long before PNSRLLC was formed, that does not necessarily establish that PNSRLLC was never accepted as a new partner in SRA after its formation. Indeed, Diamond says as much in her affidavit, and Article X of the SRA agreement specifically provides for the addition of new partners thereto.
The factual picture is further clouded by the actions of SRA, through its accountants, including PNSRLLC as a partner on annual financial statements and issuing to PNSRLLC Form K-l tax reports showing PNSRLCC as sharing interests from the partnership.[5] Similarly, Diamond’s averments that PNSRLLC was accepted by the remaining partners and actually voted at partnership meetings add flavor to the argument over its standing as a partner.
In any event, what is clear on the present record is that it cannot be said that there are no material facts in dispute over the status of PNSRLLC as a partner entitled to vote at SRA.
Consequently, it cannot be ruled as a matter of law that the vote on the amendment was, as Pappathanasi recited, “seven yes, three no and a question mark.”

The Scangas Realty II Amendment

The issue surrounding the purported amendment of the Scangas Realty II agreement is more a matter of law than fact. There are no facts in dispute. Scangas Realty II is a Massachusetts limited partnership. As such, G.L.c. 109 controls.
The Certificate of Amendment was filed with the Secretary of State by Scangas Management, Inc., and *525 Scangas Management, Inc. is the sole general partner of Scangas Realty II. A limited partnership is formed by the filing of a Certificate of Limited Partnership with the Secretary of State. G.L.c. 109, sec. 8. Scangas Realty II did so on December 30, 1985. In doing so it named Scangas Management, Inc. as its general partner. Also, on that same day the general partner and the limited partners entered into a limited partnership agreement.
The Certificate of Limited Partnership may be amended by filing a Certificate of Amendment in the office of the Secretary of State. G.L.c. 109, sec. 9. A Certificate of Limited Partnership “maybe amended at any time for any other purpose the general partners determine." G.L.c. 109, sec. (d). This statutory language, however, applies only to the Certificate of Limited Partnership and not to the partnership agreement itself.
G.L.c. 109, sec. 18 provides for the partnership agreement to permit the limited partners to vote upon any matter. The agreement, however, did not take advantage of that provision. As noted above, the partnership agreement says nothing about how it may be amended, nor does it contain any provisions granting voting power on amendments to the limited partners.
Thus, the issue with the Scangas Really II proposed amendment comes down to a question of law as to the right of a general partner to amend a limited partnership agreement in the absence of specific language in the agreement granting that authority. In answering this question the Court finds nothing helpful in G.L.c. 109 or the cases thereunder. Therefore it focuses on the fact that the limited partnership agreement is just that, an agreement.
As between the parties to the agreement, the document controls. See, e.g., Wagley v. Danforth, 46 Mass.App.Ct. 15, 17-18 (1998). Contract law is clear on issues of modification. The parties to a contract can agree to replace a contract with a new contract, or to modify the terms of the contract. Simkins Indus., Inc. v. Jeppson, 402 F.Sup. 1265 (D.Mass. 1975). However, one party cannot unilaterally change the terms of a contract. There must be an agreement to modify the contract in the same manner as the original contract was formed. Sargent v. Tenaska, Inc., 914 F.Sup. 722, 727 (D.Mass. 1996). Thus, “(ujnless otherwise provided in the agreement, a [limited] partnership agreement may only be amended with the consent of all parties.” Keller et al. v. Massachusetts Business Lawyering, sec. 8.3.3 at 8-17 (2005).
This Court, therefore, rules that the Scangas Realty II agreement was not legally amended because it failed to have the consent of all parties to the agreement.

ORDER

For the foregoing reasons, the Defendants Arthur Pappathanasi, Nicholas Scangas, Christopher Scangas, 330 Scangas, Inc., Scangas Management, Inc., Harriet Maistrellis, Pamela Scangas, Patricia Scangas and Arthur Scangas’ Motion for Summary Judgment on Plaintiff Kathryn Diamond’s Supplemental Complaint, Paper #31, is DENIED.
Further, pursuant to Mass.R.Civ.P. 56(c), partial summary judgment is granted to the plaintiff to the effect that, when final judgment is entered herein, it shall include a declaration that the purported amendment on January 12, 2006, of the Scangas Really II limited partnership agreement dated has no legal effect.

Assumed to be Paul N. Scangas.

Assumed to be Athena Scangas.

Assumed to be Kathryn Diamond.

The Court observes that Diamond sometimes spells her first name as Katherine and sometimes as Kathryn.

The Court has not been shown any SRA Federal Tax Returns. It does not know, therefore, whether, under the penalties of perjury, any representations were made to the Federal Government that PNSRLLC was a partner of SRA.